UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

_____

ABDULLAH HUSSEIN and LUTFI HUSSEIN,

                         Plaintiffs,

                                              **Case No.: 19-CV-21**

  v.

JUN-YAN, LLC, YUN YAN and "JOHN" YAN,

                         Defendants.

_____

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY**
_____

## I. INTRODUCTION

The plaintiffs, Abdulla Hussein and Lutfi Hussien, both worked as delivery drivers at a restaurant owned and operated by the defendants. For their work, the Husseins received $4 an hour plus tips, plus compensation for using their own cars for delivery. The defendants have not admitted that they failed to pay plaintiffs for delivery charges. In Jun Liang's deposition (p. 10) and the response to plaintiffs' proposed finding of fact No. 5, it is explained how the plaintiffs were compensated for delivery charges.

As will be shown in this memorandum, in defendants' response to plaintiffs' proposed findings of fact and the affidavit of Jun Liang, there are issues of fact as to whether the plaintiff's received the minimum wage of $7.25, whether the plaintiffs received overtime pay of $10.875 per hour and whether the defendants provided the plaintiffs with proper notice to claim the tip credits under both FLSA and Wisconsin Law.

## II.  ARGUMENT

### 1.    Cash Wages and Tips Received by the Plaintiffs Exceeded Both Minimum Wages and Overtime Wages

As shown on the monthly pay stubs attached to defendants' answers to plaintiffs' first set of discovery requests (Doc. 14-4), Lutfi Hussein worked for the defendants from April 25, 2018 to December 1, 2018.  His total compensation is summarized in two pages attached to defendants' answers to plaintiffs first set of discovery requests (Doc. 14-4), each full month Lutfi worked, May through November, his tips were more than twice his cash wage of $4 per hour.  If the tips are equal to the cash wage of $4 per hour, it means that the plaintiff is being compensated at the rate of $8 per hour.  If the tips are twice the cash wage of $4 per hour, it means that the employee is being compensated at the rate of $12 per hour.  For each month Lutfi worked, he was being compensated in excess of $12 per hour.  Abdullah worked for the defendants from January 1, 2016 to December 1, 2018.  His pay is summarized by monthly pay stubs attached to defendants' answers to plaintiffs first set of discovery requests (Doc. 14-4).  Abdullah also received tips each month in excess of twice the cash wages of $4 per hour.  Therefore, Abdullah was also compensated in excess of $12 per hour.

In **_P&K Restaurant Enterprise, LLC v. Jackson_**, 758 Fed. Appx. 844, 849, the court stated as follows: "Any employer who violates" the minimum wage provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages."  29 U.S.C., Section 216(b).  This quotation states that an employer who violates the minimum wage protection is subject to two liabilities: one

compensatory and the other, liquidated damages. By the aforementioned summary of the plaintiffs' pay, the defendants have shown that the plaintiffs are entitled to no compensatory damages.

### 2. Notice to Employees of Requirement to Pay Minimum Wages was Adequate to Conform to Law

In the case at bar, the employer told the employees that they were being paid less than the minimum wage and that tips they were receiving would be added to their pay to bring their pay up to the minimum wage (answer to interrogatory No. 1, Doc. 14-4). Further, the employer, each month, gave the employees a summary of wages showing the exact number of hours worked, that they were receiving $4 per hour for each hour worked, the amount of tips received on credit cards, and the total wages received by adding cash wages and tips received.

In *Gabryszak v. Aurora Bull Dog Co.*, 2019 WL 6527952 7(N.D. Ill 2019), the employer failed to show it informed the employees as to how much less their wages were than the minimum wage or that it would have made up the difference between cash wages and the minimum wage with tips. Under FLSA, workers are entitled to knowledge about a tip-credit program but not a comprehensive explanation (HN 18).

The statutory minimum information that an employer must convey under the Fair Labor Standards Act (FLSA) regarding a tip credit program is that it will pay less than minimum wage and in anticipation of the employee earning tips, how much less than the minimum wage the employer will pay, and that the employer will make up any difference between the minimum wage and the cash wage with tips (HN 20).

-3-

The FLSA also requires that all tips received by employees must be retained by the employees. In the case at bar, the plaintiff employees do not allege that they did not receive the tips, retain the tips nor do they allege that they were paid less than the minimum wage.

In ***Gabryszak***, the only information given by the employer was that they would be paid $4.95 an hour, plus tips. The employer didn't tell the employees how much less they would be paid than the minimum wage or that the difference would be made up by adding tips to the cash wage. In the case at bar, the plaintiffs were told they were being paid less than the minimum wage and that the tips they were receiving would be added to bring their pay up to the minimum wage. Further, the plaintiffs were given monthly pay stubs showing their cash wages, tips and their total compensation. The defendants in the case at bar provided their employees with adequate knowledge about the tip credit program, even if they did not provide a comprehensive explanation.

In ***P&K Restaurant Enterprise, LLC v. Jackson***, the employer kept no payroll records and therefore, no records as to how much money the employees were receiving as tips existed. For tipped employees, the regulations require that the employer tell the employee the amount of weekly or monthly tips received and showing how the hourly wages were increased by tips, ***P&K Restaurant Enterprise***, p. 49. In the case at bar, these requirements were met.

In ***Schaefer v. Walker Bros. Enterprises, Inc.***, 829 F.3d 551, 557 (7th Cir. 2016, the restaurant owner satisfied the requirements of FLSA concerning tip-credit through a combination of disclosures, including pay stubs. In ***Schaefer***, the employer also supplied

a handbook and posters explaining the tip-credit. ***Schaefer*** held that information explaining the tip-credit did not have to be in one place. The employee Schaefer, as the plaintiffs in the case at bar, do not contend that he failed to put two and two together and understand the tip-credit. In the case at bar, the plaintiffs were told by the defendants that they were being paid less than the minimum wage but that the tips would make up the difference. The plaintiffs in the case at bar also got check stubs showing the hours worked, cash wages, and the tips bringing total wages well above the minimum wage. In the case at bar, as in ***Schaefer***, the plaintiffs were given adequate notice of the tip-credit.

Finally, in ***Martin v. Tango's Restaurant, Inc.***, 969 F.2d 1319, 1322 (1ˢᵗ Cir. 1992), the court discussed the notice provision in the FLSA. The court stated that it reads Section 3(m) to require at the very least notice to the employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligation. The court goes on to say that it could easily be read to require more - for example, notice of "the amount ... determined by the employer" to constitute wages - but how much more may not be decided in this case. In the case at bar, the employer more than met the requirements cited in ***Martin***.

### 3.    Delivery Fees were Daily Paid to Plaintiffs in Cash

As explained in the Affidavit of Jun Liang filed herewith at ¶ 4, plaintiffs were asked to keep track of their vehicle expenses, but the plaintiffs declined to do so. The plaintiffs and the defendant agreed on a formula to charge customers for delivery and those delivery charges would be paid to the plaintiffs, the delivery drivers. The formula was $2 for the first 3 miles, then $1 per each additional mile, to a maximum of $6. The defendant would not take an order for a delivery further away than 6 miles. At the end of their shifts, the

plaintiffs would show their credit card receipts to the defendant. The credit card receipts would show a delivery charge and a line for tips. The defendant would add all of the delivery charges and all of the tips and pay the plaintiffs in cash (Jun Liang affidavit, ¶ 4).

The plaintiffs' monthly compensation, including reimbursement at $4 an hour, plus tips, is shown in DOC 14-4. However, the tips shown only show the tips paid by credit card. Attached to the Affidavit of Jun Liang as Exhibit A is a report from September 2018 showing gross sales. Gross sales are divided into three parts. The first part is Total Table which receipts are from persons who dined in the restaurant. The second part is Total Pick Up which shows receipts from persons who pick up their food from the restaurant and take it out. The third part is Delivery for deliveries made by employees of the restaurant. Under Delivery, it shows that approximately 34% was paid for in cash and 66% was paid for by credit card. The monthly pay stubs of the plaintiffs only show tips from credit cards (Jun Liang affidavit, ¶ 3). As shown on Exhibit A, approximately 1/3 of the delivery payments are made in cash. To arrive at total delivery payments from only the credit card payments would require the credit card payments to be multiplied by 1.51. Therefore, to arrive at total tips received by the plaintiffs, the amounts shown on their pay stubs for tips must be multiplied by 1.51. Further, to show the actual tips received by the plaintiffs, delivery charges would have to be subtracted from the total tips. These calculations are made on the Affidavit of Jun Liang at ¶ 6. It is clear from the calculations made that after delivery charges are subtracted, payments made to the plaintiffs were in excess of not only the minimum wage but also in excess of overtime wages.

**4.      Defendants are Entitled to Claim a Tip Credit in the Federal Court**

It is the position of the plaintiffs that no matter how much money was paid to the plaintiffs per hour, no matter how much information was given by the defendant to the plaintiffs orally and by check stub, the plaintiffs should be awarded double the minimum wage, with no credit for wages actually paid, because a tip declaration was not signed by the plaintiffs each pay period. The plaintiffs have not cited one Wisconsin case which supports this position. The plaintiffs have not cited one Wisconsin law which supports this position, other than a DWD regulation. Federal case law does not support the plaintiffs' position.

In *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966 86 S. Ct. 1130), it was a state claim based on pendant jurisdiction to define liability against the union for conspiring to deprive a hauler of goods of work. The federal law required that the union advocate or endorse acts of violence. The state law did not require a finding of acts of violence. There was no finding of acts of violence and the federal court found no liability against the union. Since the federal court does not require that state law be adopted in *Gibbs*, this court should not find the tip declaration signed by the employee be required to absolve defendants of liability in claiming a tip credit. In the case at bar, the defendant told the plaintiffs that they were being paid less than the minimum wage but that the difference would be made up by tips. Each month, the defendant gave the plaintiffs wage statements showing wages the defendant paid the plaintiffs. The wage statements showed wages at $4 an hour, tips received by the employee that month, and a total showing that hourly wages plus tips exceeded the minimum wage. Plaintiffs concede there is not one Wisconsin case finding liability based on the absence of a weekly tip declaration. Since the Wisconsin courts have not found such liability, the federal courts should also refrain from doing so. To do so in this case would find the defendants liable for damages and the

requirements of liquidated damages under federal law have been met. In *Gibbs* on p. 36, it states as follows: "Needless decisions of state law should be avoided, both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Also in *Gibbs* at p. 730, it states as follows: "And in *Youngdahl*, the court held that a state court injunction which would have prohibited all picketing must be modified to permit peaceful picketing of the premise."

In *Law Enforcement Standards v. Village of Lindon Station*, 101 Wis.2d 472 (S. Ct. 1981), the village had an administrative rule saying that the village could not discriminate against employees based on their criminal record. Based on that rule, the village employed a police chief who had been convicted of falsifying traffic citations. The Wisconsin Supreme Court agreed with the Law Enforcement Standards Board ruling that the village rule had to be ignored because a criminal record can be held against an employee if it deals with the duties of the employee. The court required the removal of the employee, thereby overruling the village ordinance. The court in the case at bar should overrule the application of the DWD rule that there can be no tip credit without the employee signing a tip declaration each week.

In *Campos v. Zopounidis*, 211 WL 4852491, the court granted the Plaintiff's Motion in Limine to exclude evidence relating to tip income received by the plaintiff. Evidence of any tip income received by the plaintiff was inadmissible because the defendants cannot demonstrate compliance with the prerequisites of tip credit under either the FLSA or Connecticut minimum wage laws.

In order to rely on the tip credit under the FLSA, defendants must demonstrate that the defendants have informed the plaintiff of their intent to rely on the tip credit toward the

calculation of plaintiff's minimum wage entitlements and the defendants must demonstrate that all tips received by the plaintiff were in fact retained by the plaintiff. In **Campos**, the defendants conceded that they have no documentation regarding the gross wages earned by the plaintiff or payroll records relating to wages paid to the plaintiff. Under Connecticut law, the defendants must have obtained and maintained a signed statement from the plaintiff certifying that he received gratuities of at least $2 per day in the case of part time employees or $10 per week in the case of full time employees in order to rely on the tip credit.

In the case at bar, the defendant explained to the plaintiffs they were being paid less than the minimum wage and that the tips they were receiving would be added to their pay to bring their pay up to the minimum wage (DOC 14-4). Further, defendant supplied the plaintiffs with monthly wage statements showing wages paid at $4 per hour, plus tips, bringing their pay to above the minimum wage (DOC 14-4). Like **Campos**, in the case at bar, the defendants informed the plaintiff of their intent to rely on tip credit toward a calculation of the minimum wage. All tips were received and retained by the plaintiffs and the plaintiffs received documentation as to their pay per hour, their tips and their total pay. In the case at bar, there is no law requiring a signed statement saying that the plaintiff received gratuities each week and the defendant, in the case at bar, should receive a tip credit for all monies paid to the plaintiffs.

> **5.** **The Defendants are Entitled to the Good Faith Exception to Liability for Liquidated Damages for Violations of the FLSA**

In **Stevens v. Vito's By the Water LLC**, 2017 WL 6045302, the court found that the defendants did not comply with the law under FLSA when the court found that the

defendants were not entitled to a good faith exception. However, the court discussed that requirements of a good faith exception. In **Stevens** at footnote 6, 29 U.S.C.A. Sec. 216 provides in relevant part: "In any action ... to recover unpaid minimum wages ... under the [FLSA] ... if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in Sec. 216 of this title."

In the case at bar, defendants exclaimed that the plaintiffs were being paid less than the minimum wage and that the tips they were receiving would be added to their pay to bring their pay to minimum wage. Further, the defendants supplied the plaintiffs with wage statements showing their payment at $4 per hour, the additional tips, and their total payment which exceeded the minimum wage. If it is found that the defendants are liable to the plaintiffs because they did not comply with either a portion of the FLSA or any requirement of the DWD under Wisconsin law, the defendants are entitled to the good faith exception under the FLSA because the actions of the defendants were in good faith and the defendants had reasonable grounds for believing that their attempts to comply with the minimum wage laws of both the federal government and the State of Wisconsin were in good faith.

      **6.    Defendants Agree that Plaintiffs are Entitled to Over Time Pay for Each and Every Hour Worked Over 40 and Defendants Contend the Plaintiffs Received Over Time Pay.**

      **7.    Jun Liang Agrees that he is Personally Liable for all Debts Owed to the Plaintiffs Under the FLSA.**

8.   The Plaintiffs are not Entitled to Liquidated Damages
     for Each of the Defendants' Violations of the FLSA,
     First Because the Defendants did not Violate the Terms
     and Conditions of the FLSA and Secondly, Because
     Even if Some of the Terms and Conditions of the FLSA
     Were Violated by the Defendants, Such Violations Were
     Made in Good Faith.

9.   The Plaintiffs are Entitled to $7.25 per Hour, Plus Over
     Time Pay, Pursuant to a 3 Year Statute of Limitations.  Such
     Payments Were Made by the Defendants to the Plaintiffs.

Dated this 24th  day of April, 2020.

                    **ROBERT N. MEYEROFF, S.C.**

          By:     _S/Robert N. Meyeroff_____
                    ROBERT N. MEYEROFF
                    SBN: 01014246
                    Attorney for Defendants
                    633 W. Wisconsin Avenue, Suite 605
                    Milwaukee, WI 53203-1925
                    PH:    (414) 276-8404
                    FAX:   (414) 276-1130
                    E-Mail: rmeyeroff633@sbcglobal.net